IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TANAKA BIRDO, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) CIVIL NO. 05-066-JPG |
| BRAD WOLENHAUPT, GAIL SIMER, JULIE SCHULTZE, SGT. PRIDE, and CHRISTINE WESLEY, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, a former detainee in the Marion County Jail, in Salem, Illinois, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff previously was granted leave to proceed *in forma pauperis*, and he has tendered his initial partial filing fee as ordered.

Pending before the Court are two motions to amend the complaint (Docs. 7 and 9). Both of these motions are **GRANTED**.

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(f) and 10(b), the Court finds it appropriate to break the claims in plaintiff's *pro se* complaint and other pleadings into numbered counts, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

  **COUNT 1:** Against defendants Schultze and Simer for deliberate indifference to serious medical needs.

  **COUNT 2:** Against unknown defendants for inadequate meals in the jail.

**COUNT 3:**   Against unknown defendants and named defendant Pride for racial discrimination.

**COUNT 4:**   Against unknown defendants for unconstitutional conditions of confinement at the jail.

**COUNT 5:**   Against Defendant Simer for failing to provide law books, copies of legal documents, for refusing to allow Plaintiff to speak with his attorney, and for opening his legal mail outside of his presence.

**COUNT 6:**   Against unknown defendants for an inadequate grievance mechanism at the jail.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides, in pertinent part:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). After evaluating plaintiff's claims individually, the Court finds it appropriate to exercise its authority under Section 1915A to dismiss those claims that are frivolous before allowing plaintiff to proceed with his remaining claims. *See also House v. Belford*, 956 F.2d 711, 718-19 (7th Cir. 1992).

### GENERAL CONSIDERATIONS

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Generally, confinement of pretrial detainees may not be punitive, because "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Thus, conditions of pretrial confinement must be "reasonably related to a legitimate governmental objective." *Id.* at 539. *See also Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995); *Brownell v. Figel*, 950 F.2d 1285 (7th Cir. 1991). Although claims brought pursuant to section 1983, when involving detainees, arise under the Fourteenth Amendment and not the Eighth Amendment, *see Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000), the Seventh Circuit has "found it convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) without differentiation." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

## COUNT 1

Plaintiff states that shortly after his arrest he experienced chest pain and was hospitalized. The physician diagnosed chest wall pain and prescribed anti-inflammatory medication, a heating pad, and recommended that Plaintiff return in five days. Plaintiff states that Jail officials refused to provide any of the recommended treatment. He continues to have chest pain and shortness of breath. Defendant Schultze, a nurse at the jail, refuses to take his blood pressure. Plaintiff states that he suffers from bipolar disorder, and has been denied the medications to control his condition for two months. Defendant Gail Simer has refused to help him receive his medication. Plaintiff states on Decmeber 31, 2004, he requested Tylenol, but Officer Byers (not a defendant) gave him Benadryl instead. On another occasion, Defendant Schultze refused to give him ointment for tendonitis in his knee.

> [F]or a pretrial detainee to establish a deprivation of his due process right to adequate medical care, he must demonstrate that a government official acted with deliberate

> indifference to his objectively serious medical needs. *See Qian*, 168 F.3d at 955. This inquiry includes an objective and subjective component. The objective aspect of the inquiry concerns the pretrial detainee's medical condition; it must be an injury that is, "objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (internal quotations omitted); *see also Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999). "A 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997).
>
> Even if the plaintiff satisfies this objective component, he also must tender sufficient evidence to meet the subjective prong of this inquiry. In particular, the plaintiff must establish that the relevant official had "a sufficiently culpable state of mind[,] ... deliberate indifference to [the detainee's] health or safety." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970. Evidence that the official acted negligently is insufficient to prove deliberate indifference. *See Payne*, 161 F.3d at 1040. Rather, as we have noted, " 'deliberate indifference' is simply a synonym for intentional or reckless conduct, and that 'reckless' describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred." *Qian*, 168 F.3d at 955. Consequently, to establish deliberate indifference, the plaintiff must proffer evidence "demonstrating that the defendants were aware of a substantial risk of serious injury to the detainee but nevertheless failed to take appropriate steps to protect him from a known danger." *Payne*, 161 F.3d at 1041. Simply put, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Higgins*, 178 F.3d at 510. Even if he recognizes the substantial risk, an official is free from liability if he "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 843, 114 S.Ct. 1970.

*Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 764-65 (7th Cir. 2002). Based on Plaintiff's allegations and the above-noted standards, Count 1 of the complaint cannot be dismissed at this point in the litigation. *See* 28 U.S.C. § 1915A.

### COUNT 2

Plaintiff states that he is a Muslim and receives a non-pork tray. However, on one occasion he received a pasta meal that contained bacon. Plaintiff also states that the food is too cold and that beverages are stored in uncovered gallon-sized plastic containers. As a result, dust and lint get into the drinks.

*Religious Diet*

A detainee's right to exercise his religion "does not evaporate entirely when he enters a jail." *See Tarpley v. Allen County, Indiana*, 312 F.3d 895, 898 (7th Cir. 2002) (citing *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972)). However, the detainee's right "is not unfettered." *Tarpley*, 312 F.3d at 898. Plaintiff states that he receives a non-pork tray at the jail, but that on one occasion he may have eaten a pasta dish that contained bacon. This minor oversight does not indicate a denial of Plaintiff's First Amendment right to exercise his religion, particularly when, by Plaintiff's own admission, the jail regularly accommodates his religious diet.

*Inadequate Food*

As to his food being cold, and lint and dust being present in his drinks, the only constitutional violation Plaintiff could be attempting to assert is that receiving cold and dirty food is cruel and unusual punishment in violation of the Eighth Amendment. To establish a violation of the Eighth Amendment, a prisoner must prove two elements: (1) the deprivation alleged is sufficiently serious such that it resulted in the "denial of the minimal civilized measure of life's necessities" and (2) prison officials knew of a substantial risk to the prisoner but failed to take reasonable steps to prevent the harm from occurring. *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999) (*quoting Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). In some circumstances, a prisoner's claim that he was denied food may satisfy the first element but, as the Seventh Circuit has held, the denial of food is not a *per se* violation of the Eighth Amendment. Rather, a district court "must assess the amount and duration of the deprivation." *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999). *See generally Wilson v. Seiter*, 501 U.S. 294, 304 (1991) ( it would be an Eighth Amendment violation to deny a prisoner of an "identifiable human need such as food"); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001) (withholding food from an

inmate can, in some circumstances, satisfy the first *Farmer* prong); *Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir. 1998) (noting that denial of one out of every nine meals is not a constitutional violation; *Cooper v. Sheriff of Lubbock County*, 929 F.2d 1078 (5th Cir. 1991) (failure to feed a prisoner for twelve days unconstitutional); *Cunningham v. Jones*, 567 F.2d 653, 669 (6th Cir. 1977), *app. after remand*, 667 F.2d 565 (1982) (feeding inmates only once a day for 15 days, would constitute cruel and unusual punishment only if it "deprive[s] the prisoners concerned . . . of sufficient food to maintain normal health."); *Robbins v. South*, 595 F.Supp. 785, 789 (D.Mont. 1984) (requiring inmate to eat his meals in less than 15 minutes does not amount to cruel and unusual punishment).

Plaintiff here claims that his food was cold and his drinks contained dust and lint, but he does not state that he missed any meals or that the food caused harm to his health; his claims therefore do not rise to the level of a constitutional violation.

Based on the foregoing, Count 2 of the complaint is **DISMISSED** from the action. *See* 28 U.S.C. §1915A.

## COUNT 3

Plaintiff states that on January 10, 2005, after a dispute, he was put on lock down while a white detainee who was also involved in the dispute was not. He specifies a number of other episodes in which *other* inmates were allegedly discriminated against based on their race. Plaintiff states that Sgt. Pride practices racial discrimination "rampantly."

A "prison administrative decision may give rise to an equal protection claim only if the plaintiff can establish that 'state officials had purposefully and intentionally discriminated against him.'" *Meriwether v. Faulkner*, 821 F.2d 408, 415 n.7 (7th Cir.), *cert. denied*, 484 U.S. 935 (1987); *citing Shango v. Jurich,* 681 F.2d 1091, 1104 (7th Cir. 1982). Racial discrimination by state actors violates

the Equal Protection Clause of the Fourteenth amendment unless it is narrowly tailored to serve a compelling state interest. *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). To state an equal protection claim, a plaintiff must establish that a state actor has purposely treated him differently than persons of a different race. *Id.*

Taking Plaintiff's third statement first, by merely stating that Defendant Pride practices racial discrimination "rampantly" without any specific allegations, Plaintiff has not sufficiently stated an equal protection claim. His second statement that other detainees have also been subjected to racial discrimination, does not state a constitutional claim. Plaintiff may not bring claims on behalf of other inmates in this action. Plaintiff's first statement, that after an altercation he was put in segregation, while a white inmate also involved in the altercation was not, although somewhat lacking in detail, is enough to state a claim of equal protection. A problem arises, however, in that Plaintiff does not specify by name the defendants involved in putting him in segregation. Accordingly, this portion of the complaint is **DISMISSED without prejudice** to Plaintiff's resubmitting the claim and specifying defendants by name.

### COUNT 4

*Unclean conditions*

Plaintiff states that the jail, particularly the catwalks on the second floors, are covered with lint and dust. Cleaning supplies are usually passed out on Fridays and Sundays, but on November 30 and December 1, 2004, cleaning supplies were not passed out and on January 19 and 20, 2005, cells, showers, and tables were not cleaned at all.

"The conditions of imprisonment, whether of pretrial detainees or of convicted criminals, do not reach even the threshold of constitutional concern until a showing is made of 'genuine privations

and hardship over an extended period of time.'" *Duran v. Elrod*, 760 F.2d 756, 759 (7th Cir. 1985). Lapses from minimum standards of sanitation may be excusable where such conditions are temporary and affect only a few individuals. *Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994); *Harris v. Fleming*, 839 F.2d 1232 (7th Cir. 1988). Plaintiff states that cleaning supplies are regularly provided to detainees for cleaning their cells, but that they were not provided on a few occasions. That Plaintiff was able to specify the days on which cleaning supplies were not available belies any claims of continued unconstitutional conditions.

*Inadequate heat*

Plaintiff states that the heating system at the jail is inoperative and that cold air comes out of the vents. He states that "sometimes inmates tell them to turn off the heat," after which cold air blows out of the vents. He states that "many times I've awaken [sic] cold air blowing." Although a detainee has no constitutional right to confinement in comfort, *see Martin v. Tyson*, 845 F.2d 1451, 1457 (7th Cir.), *cert. denied*, 488 US 863 (1988) (detainee has no right to a pillow, new tennis shoes, or frequent laundry service); *cf. Caldwell v. Miller*, 790 F.2d 589, 601 (7th Cir.1986), he possesses a right to adequate heat and shelter. *Henderson v. DeRobertis*, 940 F.2d 1055, 1059 (7th Cir.1991), *cert. denied*, 503 U.S. 966 (1992). However, Plaintiff's contention that he awoke to cold air blowing out of the vents, is not a sufficient allegation of inadequate heat and shelter. In fact, the statement itself indicates that the jail is heated, but that sometimes the air coming out of the vents is not warm. A de minimus deprivation of a few nights with inadequate heat does not state a constitutional claim.

*Contaminated water*

Plaintiff states that on January 18, 2005, the water in the jail was contaminated, but because Sgt. Pride did not inform detainees, about fifty of them got sick from drinking the water. Plaintiff does not

state that he became ill after drinking the alleged contaminated water. As such, he has not shown that he personally experienced a deprivation required to state a claim under section 1983.

*Recreation*

Plaintiff also states that the jail is understaffed. As a result, detainees are not allowed fresh air. In his amended complaint, Plaintiff states that 35 days passed without him being offered any recreation time.

> In recent years we have not only acknowledged that a lack of exercise can rise to a constitutional violation, *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1986), but have concluded that "exercise is now regarded in many quarters as an indispensable component of preventive medicine." *Anderson v. Romero*, 72 F.3d 518, 528 (7th Cir. 1995). Given current norms, exercise is no longer considered an optional form of recreation, but is instead a necessary requirement for physical and mental well-being.
>
> Although we have recognized the value of exercise and its medicinal effects, we have also consistently held that short-term denials of exercise may be inevitable in the prison context and are not so detrimental as to constitute a constitutional deprivation. *Thomas v. Ramos*, 130 F.3d 754, 764 (7th Cir. 1997) (70-day denial permissible); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) (28 day denial not deprivation); *Shelby County Jail Inmates v. Westlake*, 798 F.2d 1085, 1089 (7th Cir. 1986) (limited recreational activities sufficient, where average prison stay was 10 days or less); *Caldwell v. Miller*, 790 F.2d 589, 601 (7th Cir. 1986) (no deprivation where exercise was denied for 30 days, but then allowed one hour indoor exercise for next 6 months); *but see Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996) (viable constitutional claim where prisoner denied recreational opportunities for 7 weeks); *Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (1989) (reversing summary judgment for prison officials where segregated prisoner denied exercise for 101 days).

*Delaney v. DeTella*, 256 F.3d 679, 683-84 (7th Cir. 2001). Based on these standards, Plaintiff's allegation of 35 days without recreation constitutes a permissible short-term denial of exercise. As, such, Plaintiff's allegations does not state a constitutional claim.

*Second-hand smoke*

Finally, in the amendments to his complaint, Plaintiff states that he has been exposed to second-hand smoke. The Supreme Court has held that an inmate "states a cause of action under the Eighth

Amendment by alleging that petitioners have, with deliberate indifference, exposed him to levels of ETS [environmental tobacco smoke] that pose an unreasonable risk of serious damage to his future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993); *see also Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). Plaintiff's statement regarding exposure to second-hand smoke is not sufficient to state a constitutional claim without an allegation that a named defendant or defendants were deliberately indifferent to the exposure.

Based on the foregoing, all claims in Count 4 are **DISMISSED with prejudice** from the action. *See* 28 U.S.C. § 1915A.

### COUNT 5

Plaintiff states that the law library is inadequate. Plaintiff requested the 2004 Illinois Compiled Statues and it was "on order" for months. Defendant Simer has made it difficult for Plaintiff to obtain copies of his legal documents. Plaintiff states that on January 13, 2005, Defendant Simer refused to allow him to speak with his attorney on a non-monitored telephone and refused to notarize his legal papers.

It is well-established that prisoners have a "fundamental constitutional right of access to the courts." *Alston v. DeBruyn*, 13 F.3d 1036, 1040 (7th Cir.1994) (citing *Bounds v. Smith*, 430 U.S. 817, 828 (1977)). This right of access extends to pretrial detainees as well as convicted prisoners. *Casteel v. Pieschek*, 3 F.3d 1050, 1053 (7th Cir.1993). In order to prove a violation of this right, Broadus must show (1) that prison officials failed "to assist in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law,' " *Alston*, 13 F.3d at 1040-41 (quoting *Bounds*, 430 U.S. at 828), and (2) that the prison officials' conduct caused some detriment to his pending litigation. *See Jenkins v. Lane*, 977 F.2d 266, 268 (7th

Cir.1992); *Shango v. Jurich*, 965 F.2d 289, 291 (7th Cir.1992).

Plaintiff has not shown an actual detriment to pending litigation. The difficulty he had getting documents or speaking with his attorney must have been frustrating, but without an allegation of an actual detriment, Plaintiff has not stated a constitutional claim of access to courts.

Plaintiff also states that some of his legal mail has been opened outside of his presence.

> Inmates have a First Amendment right both to send and receive mail, *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999), but that right does not preclude prison officials from examining mail to ensure that it does not contain contraband, *Wolff v. McDonnell*, 418 U.S. 539, 576, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Rowe*, 196 F.3d at 782. An inmate's legal mail, however, is entitled to greater protections because of the potential for interference with his right of access to the courts. *Rowe*, 196 F.3d at 782. Thus, when a prison receives a letter for an inmate that is marked with an attorney's name and a warning that the letter is legal mail, officials potentially violate the inmate's rights if they open the letter outside of the inmate's presence. *See Wolff*, 418 U.S. at 577, 94 S.Ct. 2963; *Castillo v. Cook County Mail Room Dep't*, 990 F.2d 304, 305-06 (7th Cir.1993).

*Kaufman v. McCaughtry*, 419 F.3d 678, 685-86 (7th Cir. 2005). However, the inadvertent or negligent opening of an occasional legal letter is not actionable. *See, e.g., Bryant v. Winston*, 750 F.Supp. 733 (E.D. Va. 1990). In a grievance submitted to the Court with the complaint, Plaintiff complained about his legal mail being opened before it was delivered to him. Defendant Simer replied to the grievance, stating that the problem with the mail in question had been resolved and advising Plaintiff that if the mail is not "legal mail" it would continue to be opened. This response indicates that the opening of the mail was inadvertent or negligent, and is not a constitutional violation based on the above-noted standards. Based on the foregoing, Count 5 is **DISMISSED with prejudice** from the action. *See* 28 U.S.C. § 1915A.

## COUNT 6

Plaintiff states that some of his grievances were never answered. "[A] state's inmate grievance

procedures do not give rise to a liberty interest protected by the due process clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982). Accordingly, this claim is **DISMISSED** from the action with prejudice. *See* 28 U.S.C. § 1915A.

### DEFENDANTS

A word about defendants is in order. Plaintiff made no specific allegations against defendants Wolenhaupt and Wesley. "A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption." *Collins v. Kibort*,143 F.3d 331, 334 (7th Cir. 1998). Accordingly, they are dismissed from the action. All claims against Defendant Pride have been dismissed from the action. As such, Defendant Pride is dismissed as a defendant.

### SUMMARY AND CONCLUSION

Plaintiff is allowed to proceed against Defendants Simer and Schultze on Count 1. Defendants Wolenhaupt, Wesley, and Pride are **DISMISSED** as defendants from the action.

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for Defendants **Simer and Schultze**. The Clerk shall forward those forms, USM-285 forms submitted by the Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on Defendants **Simer and Schultze** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure. Process in this case shall consist of the complaint,

applicable forms 1A and 1B, and this Memorandum and Order.  For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form.

With respect to former employees of Marion County Jail who no longer can be found at the work address provided by Plaintiff, the County shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal.  Address information obtained from the County pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received.  If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566©.

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant.  Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required. Costs of service will be taxed against the personally served defendant in accordance with the provisions of Fed. R. Civ. P. 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff  is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel,

upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court.  He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts.  This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.

**IT IS SO ORDERED.**

**Dated: January 3, 2006**

                                           **s/ J. Phil Gilbert**
                                           **U. S. District Judge**